## In re ACCOUNTS OF MORAN.

### GUARDIAN AND WARD.

A controversy between a guardian and ward over the guardian's accounts was referred by the Orphans' Court to the auditor to state an account. The guardian, although notified, failed to attend the hearings before the auditor. Exceptions were taken by the ward to the report of the auditor, which were set for hearing and notice given to the guardian to appear and defend. Failing to do so, the exceptions were heard *ex parte* and the finding of the auditor against the guardian was increased by the court. On an appeal by the guardian, it was *held* that in view of the repeated defaults and neglects on the part of the guardian to appear and defend against possible errors in the account, she could not claim the benefit of any presumptions that she might otherwise have invoked, and that to procure a reversal of the decree below she would have to show clearly that such decree was substantially erroneous.

No. 79.   Submitted November 16, 1893.—Decided January 19, 1894.

HEARING on an appeal by a guardian from a decree of the Supreme Court of the District, holding an orphans' court, in a case involving matters of account between guardian and ward. *Affirmed.*

The FACTS sufficiently appear in the opinion.

*Mr. A. A. Hoehling, jr.* for the appellant.

*Mr. Mills Dean* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This case was transferred to this court from the General Term of the Supreme Court of the District of Columbia, where it was pending on appeal at the time this court was organized. The appeal was taken from a decree passed by a special term held for orphans' court business, to the General Term.

The case involves matters of account between guardian and ward, and the whole subject of controversy is simply matters of fact. The case has been before the auditor of the court, upon a reference, with authority to examine into the subject-matters of contest, and from vouchers and proof produced before him to state such account or accounts as might be required. The case was pending before that officer for a considerable time, and it appears that he had great difficulty in getting the *data* to enable him to state proper accounts. In his final report he refers to the difficulty that he had had in getting the guardian, the present appellant, to attend to the statement of the account. Upon reopening the investigation, at the instance of the ward, he says the guardian was formally notified to appear and furnish the remainder of her accounts. " Similar notice," says the auditor, " was repeated several times, her solicitor having withdrawn from the case, and after many efforts to secure the attendance of the guardian for the further statement of her accounts of receipts and expenditures, I proceeded to make up the account upon estimates derived from the evidence previously taken under reference." And by the account stated and returned, the auditor showed a balance due the ward of $455.44, as of April 21, 1890.

The proof returned by the auditor disclosed great looseness in the management of the ward's estate by the guardian. There had been no regular accounting—indeed, no accounting at all; and no account that could be called such, had been kept by the guardian. The only excuse for this neglect of duty is the probable want of knowledge of proper business methods, on the part of the guardian. The real property greatly depreciated in its rental value, while under the management of the guardian, and the income from that source was greatly reduced. But there was little or no excuse for the neglect of duty in attending before the auditor, and afterwards before the court, to furnish all the means in her power to have proper accounts stated of her guardianship. After the auditor had stated his accounts, and made report thereof,

the ward filed exceptions to the report, because the guardian had not been charged with the full amount of the receipts, and had been credited with amounts to which she was not entitled. These exceptions were regularly set for hearing, and notice given the guardian to appear and defend against the exceptions. But she paid no attention to the warning, and the consequence was that the exceptions were heard *ex parte*. By the decree of the court, the guardian was held to be chargeable with an additional sum of $228.50, more than the auditor had charged in the stated account; and several items of credit to the guardian in the account were disallowed by the court, the final result being a decree against the guardian for $940.19 in favor of the ward, instead of the sum of $455.44, found to be due by the account of the auditor.

The amount thus found due and decreed against the guardian would seem to be the result of the application of strict principles of accountability; but we are not able to say that the court below was in error in applying strict principles to the case. In view of the repeated defaults and neglects of the guardian to appear and defend against possible errors in the account, she is not in a position to claim the benefit of any presumptions that might have been invoked, if she had shown herself ready and willing to account fully and fairly for her trust. At any rate, it is incumbent on her, on this appeal, in order to procure a reversal of the decree appealed from, to show clearly and beyond reasonable question, that the decree made by the court below is substantially erroneous. But this, after carefully examining the evidence, we think she has failed to do. We do not find any such error in the decree as will justify this court in reversing it, and it must therefore be affirmed, with costs to the appellee.

*Decree affirmed.*